UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BERNARDO N. BEIRA, SR.,

     Plaintiff,

v.                                                                    Case No:  6:12-cv-147-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

### REPORT AND RECOMMENDATION[1]

     The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act.

     I have reviewed the record, including the administrative law judge's ("ALJ") decision, a transcript of the proceedings, the exhibits, the administrative record, and the pleadings and memoranda submitted by the parties.  For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **reversed** and **remanded** for further proceedings consistent with the findings in this report, pursuant to sentence four of 42 U.S.C. § 405(g).

_____

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

## I.  Background

A.  Procedural History

Plaintiff was born in 1962 and was 42 years old at the time of his alleged onset of disability.  (Tr. 53).  He has a high school education and past relevant work as a computer support technician. (Tr. 55).

Plaintiff filed an application for DIB benefits on January 16, 2008. (Tr. 157).  He subsequently filed an application for SSI benefits on January 27, 2009 (Tr. 160-69), which was merged with his DIB application.  He alleges disability beginning on December 30, 2004 due to seizures, pain in both knees, a sleeping disorder, emphysema, depression and anxiety.  (Tr. 206).

When the administrative hearing was conducted, Plaintiff weighed 328 pounds after losing 80 pounds due to gastric bypass surgery. (Tr. 53-54). He began receiving treatment for his mental health conditions in 2006 and was drinking alcohol at the time. (Tr. 75). He testified that he has not used alcohol since June 2008. (Tr. 81).

Plaintiff's application was denied initially and after reconsideration. (Tr. 110-113, 117-119). On November 23, 2008, he requested a hearing before an ALJ. (Tr. 120).  The hearing was held on June 9, 2010. (Tr. 41-106).

In a decision dated August 12, 2010, the ALJ found that Plaintiff had the following severe impairments: obesity, depression, bilateral knee problems, left leg fractures, and alcohol abuse.  (Tr. 20). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of sedentary work and that he could occasionally climb, balance, kneel, crawl, and crouch, but that he should avoid concentrated exposure to hazards and use a cane for ambulation.  (Tr. 23).  The ALJ further limited Plaintiff to simple, routine, repetitive tasks with only brief interactions with

others. (Id.). Based on this RFC, the ALJ determined that Plaintiff was unable to perform any of his past work, but that he could perform other work as a final assembler of optical goods or as an eye dropper assembler. (Tr. 32-33). On December 2, 2011, the Appeals Council denied Plaintiff's timely request for review (Tr. 1-6), making the ALJ's decision the final decision of the Commissioner.  Plaintiff has exhausted his administrative remedies and this case is now ripe for consideration under 42 U.S.C. § 405(g).

    B.  Relevant Medical Records

       1.  Veterans Affairs Medical Center ("VAMC")/Osceola Regional Hospital/Springbrook Hospital

On July 6, 2005, Plaintiff experienced a seizure and was admitted to Osceola Regional Hospital via EMS.  (Tr. 307).  His history was noted for alcohol withdrawal seizures. (Id.).  He was diagnosed with seizure disorder, alcohol withdrawal, substance abuse, febrile illness, and hypokalemia. (Tr. 308).  Plaintiff was treated overnight and discharged on Ativan. (Id.).  He was readmitted on September 7, 2005 for convulsions after stopping alcohol. (Tr. 311).  The diagnosis was alcoholic hepatitis, seizures secondary to alcohol withdrawal, and chronic alcoholism. (Tr. 312).

On September 27, 2005, Plaintiff began treatment at the VAMC. (Tr. 589).  He reported no alcohol use since his last hospitalization.  His medical history was noted for multiple rib fractures in an automobile accident in 1990 and an ACL repair in 1982. (Id.). On April 7, 2006, Plaintiff was admitted to Osceola Regional for seizure activity.  (Tr. 316).  He was diagnosed with seizure activity, alcoholic liver disease, alcohol abuse, and pneumonia and treated as an inpatient through April 10, 2006.  (Tr. 316-317). On September 13, 2006, Plaintiff was readmitted to the hospital for alcoholic seizures and treated as an inpatient for two days. (Tr. 324-325). On September 26, 2006, Plaintiff was

seen for follow-up at the VAMC.  (Tr. 587).  The diagnosis was alcohol related seizures and Plaintiff was prescribed Dilantin.[2] (Tr. 588).

On November 24, 2006, Plaintiff returned to the VAMC for a follow-up visit.  (Tr. 586).  He reported no alcohol use in the past three months, but said he had problems with his left shoulder and that he had a history of anxiety. (Id.). On April 10, 2007, Plaintiff was admitted to Osceola Hospital for complaints of abdominal pain associated with nausea and vomiting.  (Tr. 336).  He was treated with IV fluids and antibiotics as an inpatient through April 13, 2007.  (Id.).  His final diagnoses were acute pancreatitis, alcoholic hepatitis, and abdominal pain and vomiting.  (Id.).  On October 21, 2007, Plaintiff was readmitted to Osceola Regional where he was treated through October 27, 2007.  (Tr. 340).  Plaintiff arrived with complaints of abdominal pain and was also found to have acute bronchitis.  (Id.).

On December 5, 2007, Plaintiff returned to the VAMC for follow-up. (Tr. 584).  This time, he reported no alcohol use for the past 3 to 4 months. (Id.).  He complained of insomnia and his spouse reported he was snoring and experiencing apneic spells. (Id.). Plaintiff also reported that he had injured his left knee when he fell off a ladder and that he was seeing a physician outside the facility for this problem. (Id.).  Plaintiff was found to be 72 inches tall with a weight of 251 pounds.  (Id.).  An examination revealed some tenderness in the left pre-patellar area.  (Tr. 585).  He was diagnosed with insomnia, prescribed Trazodone,[3] and scheduled for a sleep study. (Id.).

---

[2] Dilantin is used to prevent and control seizures. (www.rxlist.com).

[3] Trazodone is used for the treatment of depression and insomnia. (http://en.wikipedia.org/wiki/Trazodone).

Plaintiff's next visit to the VAMC was on January 9, 2008, at which time he reported increased depression and continued left knee pain. (Tr. 582-84). He weighed 280 pounds and was diagnosed with depressive disorder. (Tr. 582-583). On February 1, 2008, Plaintiff presented to the emergency room at Osceola Regional with complaints of depression with symptoms of frustration, paranoia, confusion, and auditory hallucinations. (Tr. 371). A mental status examination revealed anxiety and a depressed affect. (Tr. 372). Plaintiff was diagnosed with psychosis, Baker Acted, and later transferred from Osceola Regional to Springbrook Hospital. (Tr. 373, 378). A mental status evaluation revealed that Plaintiff: was friendly and cooperative, yet sad; his speech was coherent, relevant, spontaneous and goal-directed; he denied hallucinations, delusions, obsessions, compulsions, suicidal or homicidal ideation; he was alert and oriented to person, place, time and situation; his memory was intact for recent and remote events; but his insight and judgment was impaired. (Id.). Plaintiff was discharged on February 5, 2008 with a final diagnosis of alcohol abuse. (Tr. 379). His GAF score was 40.[4] (Id.).

Janette Torres-Cruz, M.D.,[5] evaluated Plaintiff at the VAMC's mental health clinic on February 7, 2008. (Tr. 580). Plaintiff reported symptoms of constant worry, muscle tension, irritability, restlessness, easy fatigue, and sleep problems. (Tr. 580). He also related episodes of depression that lasted for up to one week, and stated that he engaged in repetitive activities of hand washing, cleaning, and ordering. (Id.). He denied using alcohol since January 30, 2008. (Id.). A mental status examination revealed that Plaintiff was alert, active, oriented to person, place and time, pleasant and cooperative. (Tr. 580).

---

[4] A GAF of 31-40 is indicative of impairment in reality testing or communication (e.g., speech is at times illogical/irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Diagnostic and Statistical Manual of Mental Disorders 4th Ed. Text Revision ("DSM"), p. 34.

[5] Dr. Torres-Cruz is a board certified psychiatrist. (www.ama-assn.org).

The mental status examination also revealed that although he was anxious, his speech was normal in rate and volume, he maintained good eye contact, had logical and relevant thought processes, intact insight, judgment, memory and concentration. (Tr. 580-81). Dr. Torres-Cruz found that Plaintiff had no suicidal or homicidal ideation or hallucinations (auditory or visual), and diagnosed generalized anxiety disorder, obsessive-compulsive disorder, and alcohol dependence. (Tr. 581). The doctor prescribed Sertraline[6] and Trazodone and recommended counseling. (Id.). Clinical psychologist Jeannine Kubiak, Ph.D., began treating Plaintiff at the VAMC on February 20, 2008. (Tr. 477). A mental status examination revealed rapid speech, tangential cognition, paranoia, dysphoric mood, labile affect, and limited insight and judgment. (Tr. 479). Dr. Kubiak diagnosed alcohol dependence and dysthymic disorder. Plaintiff's GAF score was 55.[7] (Id.).

On March 12, 2008, Plaintiff was seen for a follow-up by Dr. Kubiak. (Tr. 476). Plaintiff reported that he was sleeping a lot and got stressed easily. Mental status evaluation revealed that Plaintiff was alert and cooperative and that his speech was within normal limits. (Tr. 476). Plaintiff's thinking was logical and goal-directed, and although his mood was anxious, his insight and judgment were intact and he denied suicidal or homicidal ideation as well as any other symptom of psychosis. (Id.). The psychologist diagnosed generalized anxiety disorder. (Id.). A sleep study performed on May 16, 2008 revealed decreased sleep efficiency and prolonged periods of wakefulness with mild sleep apnea.[8] (Tr. 482-483). On June 24, 2008, Plaintiff was seen at the VAMC for

---

[6] Sertraline (Zoloft) is used to treat depression, panic attacks, obsessive compulsive disorders, post-traumatic stress disorder, and social anxiety disorder (social phobia). (www.rxlist.com).
[7] A GAF score of 51-60 denotes moderate symptoms. DSM, p. 34.
[8] Sleep apnea is the temporary absence of breathing during sleep. Taber's, p. 144. It is a leading cause of daytime sleepiness.

complaints of back pain.  (Tr. 466).  An examination revealed right ankle swelling, mild

back pain with toe raising and mild pain with flexion.  (Tr. 468).  Plaintiff was diagnosed

with low back pain and obesity.  (Id.).  He was prescribed Robaxin[9] and Lodine.[10]  (Id.).

Sonia Rodriguez, M.D.,[11] evaluated Plaintiff in the mental health clinic on August

26, 2008. (Tr. 427).  Plaintiff reported symptoms of anxiety and poor sleep. (Id.). Dr.

Rodriguez's mental status examination found restless motor activity, pressured speech,

irritable mood, a restricted affect, hyper-vigilence, and fair insight and judgment. (Tr. 428-

429).  The doctor diagnosed generalized anxiety disorder, obsessive compulsive

disorder, and alcohol dependence in remission.  (Tr. 429).  Plaintiff's GAF score was 50.[12]

Dr. Rodriguez stopped Trazodone, increased Zoloft, and prescribed Seroquel.[13]  (Id.). On

September 4, 2008, Plaintiff was diagnosed with chronic bilateral knee pain and referred

for new braces.  (Tr. 555).  He was also seen by Dr. Kubiak on the same day.  (Tr. 556).

Plaintiff told Dr. Kubiak he was living alone since he was arrested for domestic violence

related to a relapse of alcohol.  (Id.).  His GAF score was 50.  (Tr. 557).

On December 4, 2008, Plaintiff returned to see Dr. Rodriguez.  He reported anxiety

and poor sleep, despite compliance with his medications.  (Tr. 541).  He also complained

of knee and ankle pain.  (Id.).  A mental status evaluation was notable for a restricted

---

(http://www.nhlbi.nih.gov/health/dci/Diseases/SleepApnea/SleepApnea_WhatIs.html).

[9] Robaxin is indicated in addition to rest, physical therapy, and other measures for the relief of discomfort associated with a painful musculoskeletal condition. (www.rxlist.com).

[10] Lodine (Etodolac) is used to relieve pain from various conditions. It also reduces pain, swelling, and joint stiffness. (www.rxlist.com).

[11] Dr. Rodriguez is a psychiatrist. (www.ama-assn.org).

[12] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM, p. 34.

[13] Seroquel is used to treat delusions, hallucinations, unorganized thoughts, and hostility. (www.rxlist.com).

affect, hyper-vigilence, and fair insight and judgment. (Tr. 542). Dr. Rodriguez diagnosed generalized anxiety disorder, obsessive compulsive disorder, and alcohol dependence in remission. (Tr. 543). On February 2, 2009, Plaintiff was seen by Dr. Kubiak, who noted that Plaintiff had made no progress in his goals and the diagnoses were unchanged. (Tr. 536-537). On March 9, 2009, Plaintiff told Dr. Rodriguez he was doing a little better. (Tr. 608). A mental status examination revealed restless motor activity, pressured speech, a restricted affect, hyper-vigilence, and fair insight and judgment. (Tr. 608-609).

Latha Babuji, MSN, ARNP, evaluated Plaintiff in the mental health clinic on April 6, 2009. (Tr. 625). Plaintiff reported ongoing problems with anxiety, increased appetite, low energy, improved sleep, and pain rated as 8 on a 10-point scale. (Tr. 625-626). A mental status examination revealed forgetfulness, distractibility, limited attention span, and decreased concentration. (Tr. 626-627). Plaintiff was diagnosed with generalized anxiety disorder and prescribed Sertraline and Quetiapine. (Tr. 627-628). Ms. Babuji completed a Medical Verification Form wherein she diagnosed generalized anxiety disorder. (Tr. 701).

On April 13, 2009, Plaintiff was seen at the VAMC for complaints of back pain. (Tr. 619). He was diagnosed with obesity, sleep apnea, and lower back pain and told to continue to lose weight and get physical therapy. (Tr. 621). On May 5, 2009, Plaintiff was seen for an evaluation of right knee pain. (Tr. 658-659). The examination was notable for an antalgic gait and right knee tenderness. (Tr. 660). X-rays of Plaintiff's right knee showed minimal degenerative changes. (Tr. 662). On July 17, 2009, Plaintiff was evaluated by Dr. Rodriguez for complaints of increased worry, poor concentration, and distractibility. (Tr. 688). The doctor's mental status examination revealed psychomotor retardation, a depressed mood, and fair insight and judgment. (Tr. 689-690). Dr.

Rodriguez diagnosed generalized anxiety disorder, obsessive compulsive disorder, and alcohol dependence in remission.  (Tr. 693).  Plaintiff's GAF score was 50.  The doctor increased Plaintiff's dosages of Seroquel and Zoloft.  (Id.).

X-rays of the left knee dated February 12, 2010 were suspicious for lateral tibial plateau fracture of unknown age, as well as degenerative changes.  (Tr. 712).  X-rays of both ankles dated March 25, 2010 showed dystrophic calcification or age indeterminate lateral malleolus small avulsion fracture on the right and bilateral degenerative changes, Achilles' tendon calcifications, and mild soft tissue swelling.  (Tr. 710).  On June 10, 2010, Plaintiff returned to Dr. Torres-Cruz who diagnosed major depressive disorder and alcohol dependence in sustained full remission. (Tr. 884, 887).  Plaintiff's GAF score was 55. (Id.).

2.  Frederick Schroeder, M.D. - Treating Orthopedic Surgeon[14]

Dr. Schroeder began treating Plaintiff on November 26, 2007 for complaints of left knee pain after he fell off a ladder on November 12, 2007.  (Tr. 686).  Examination revealed moderate knee effusion, some mild tenderness over the anterolateral joint line, limited range of motion, and swelling.  (Id.).  X-rays showed a minimally displaced lateral tibial plateau fracture.  (Id.).  On December 3, 2007, Dr. Schroeder noted that an MRI showed a medial and lateral tibial plateau fracture and mild irregularities of the articular cartilage on the lateral component.  (Tr. 685).  Plaintiff was advised to remain non-weight bearing.  (Id.).  On December 26, 2007, Plaintiff reported doing better and was referred to physical therapy. (Id.).

On May 8, 2008, Plaintiff was seen for complaints of right ankle pain.  (Tr. 683). Dr. Schroeder's examination revealed some mild soreness over the posterior aspect of

---

[14] Dr. Schroeder is a board certified orthopedic surgeon. (www.ama-assn.org).

the medial malleolus and X-rays showed mild degenerative changes.  (Id.).  The doctor

advised Plaintiff to limit his activities.  (Id.).  On August 6, 2009, Plaintiff complained of

pain in his left knee that had increased over the past four months.  (Tr. 682).  Examination

revealed mild to moderate crepitus in the knee and minimal joint discomfort. Dr.

Schroeder diagnosed degenerative arthritis of the left knee and injected the knee with

Depo-Medrol.[15]  (Id.).

> 3.   Ramon Martinez, M.D. - Examining Psychiatrist[16]

Dr. Martinez evaluated Plaintiff on May 11, 2010.  (Tr. 854).  A mental status

examination revealed intrusive thinking with apparent distress, severe anxiety, and fair

insight and judgment.  (Tr. 856).  Dr. Martinez diagnosed generalized anxiety disorder

with panic attacks, obsessive-compulsive disorder, mood disorder, rule-out bipolar

disorder, and history of alcohol abuse in remission.  (Id.).  Plaintiff's GAF score was 50.

(Id.).

Dr. Martinez completed a Psychiatric/Psychological Impairment Questionnaire

dated May 11, 2010.  (Tr. 859-866).  The doctor's clinical findings included appetite

disturbance with weight change, sleep disturbance, mood disturbance, emotional lability,

recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation

or retardation, difficulty thinking or concentrating, social withdrawal or isolation, an

inappropriate affect, decreased energy, manic syndrome, obsessions or compulsions,

intrusive recollections of a traumatic experience, persistent irrational fears, generalized

persistent anxiety, and irritability.  (Tr. 860).  Plaintiff's primary symptoms were mood

changes, anhedonia, poor concentration, and insomnia. (Tr. 861).

---

[15] Depo-Medrol is a corticosteroid used for relief of inflamed areas. (www.drugs.com).

[16] Dr. Martinez is a board certified psychiatrist. (www.ama-assn.org).

Dr. Martinez noted that Plaintiff was moderately limited in his ability to remember locations and work-like procedures, the ability to understand and remember one or two step instructions, the ability to carry out simple one or two step instructions, and the ability to work in coordination with or in proximity to others without being distracted by them, the ability to make simple work related decisions, the ability to interact appropriately with the general public, the ability to ask simple questions or request assistance, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, the ability to be aware of normal hazards and take appropriate precautions, and the ability to travel to unfamiliar places or use public transportation.  (Tr. 862-64).  Dr. Martinez also found Plaintiff mildly limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 863).

The doctor said Plaintiff was markedly limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; the ability to sustain ordinary routine without supervision; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently.  (Tr. 862-64).

Dr. Martinez determined that Plaintiff experienced episodes of decompensation or deterioration in work or work-like settings that caused him to withdraw from the situation and/or experience an exacerbation of signs and symptoms.  (Tr. 864).  Plaintiff's

medications caused side-effects of sedation and he was found incapable of handling even low stress work. (Tr. 864-865). Dr. Martinez estimated that Plaintiff would be absent from work, on average, more than three times a month as a result of his impairments or treatment. (Tr. 866). The doctor believed Plaintiff's symptoms and limitations as detailed in the questionnaire had been present since 2008. (Id.).

4. Carol Grant, M.D. – SSA Consultative Examiner[17]

Dr. Grant evaluated Plaintiff on April 4, 2008, at the request of the Social Security Administration. (Tr. 405). Plaintiff's weight was 288 pounds. (Tr. 406). Dr. Grant's examination revealed decreased knee flexion bilaterally, a mildly antalgic gait, and ambulation with assistance from a cane. (Tr. 407-408). Dr. Grant diagnosed status-post left knee fracture, status-post right knee ACL tear, sleep apnea, seizure disorder, depression, and emphysema. (Tr. 408).

5. Non-Examining Medical Consultants

Pamela Green, Ph.D., reviewed Plaintiff's claim file on March 26, 2008. (Tr. 391). Dr. Green noted that Plaintiff had mild restriction in his activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace; with 1-2 episodes of decompensation. (Tr. 401, 403). She also noted that Plaintiff had moderate limitations in the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting. (Tr. 387-

_____

[17] Dr. Grant is an internist. (www.ama-assn.org).

88).  Dr. Green felt Plaintiff could understand simple routine data; that he had reduced concentration, persistence or pace with somatic concerns; and that he had social skills.  (Tr. 388).

Eric Weiner, Ph.D., reviewed Plaintiff's claim file on September 15, 2008.  (Tr. 493).  Dr. Wiener noted that Plaintiff had moderate restriction in his activities of daily living, social functioning, and maintaining concentration, persistence, or pace; with 1-2 episodes of decompensation.  (Tr. 503, 505).  Dr. Wiener reported that functionally, Plaintiff "lives alone, can drive, can pay bills, shops in stores and by computer, does limited cook/chores, no reminders to take meds or personal care."  (Tr. 505).  Dr. Wiener felt Plaintiff's limitations "emphasized physical limits."  (Id.).  He also said Plaintiff had moderate restriction in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to interact appropriately with the general public.  (Tr. 507-08).

C.  Relevant Testimony of Vocational Expert

Vocational Expert Walter Todorowski (the "VE"), was questioned about an individual of Plaintiff's age, education, and work history who was limited to "medium" work except that he could occasionally climb, balance, kneel, and crawl, as well as frequently stoop and crouch.  (Tr. 87).  This person needed to avoid concentrated exposure to hazards; use a cane for ambulation; and was limited to simple, routine, repetitive tasks with only brief interaction with others.  (Tr. 87-89).  The VE opined that such a person could work as a final assembler of optical goods or as an eye dropper assembler.  (Id.).

## II.  The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Commissioner and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ found Plaintiff last met the insured requirements of the Act on June 30, 2010 and that he must prove his disability arose on or before that date.  (Tr. 20).  The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 30, 2004.  (Id.).  At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity, depression, bilateral knee problems, left leg fractures, and alcohol abuse.  (Id.).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. 21-23). The ALJ also determined Plaintiff's RFC.  (Tr. 23-32).  At step four, the ALJ decided Plaintiff could not perform any past relevant work.  (Tr. 32).  Finally, at step five, relying on the VE's testimony, and after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are other jobs that exist in significant numbers in the

national economy that Plaintiff could perform.  (Tr. 32).  Accordingly, the ALJ held that Plaintiff had not been under a disability within the meaning of the Act from Plaintiff's alleged December 30, 2004 onset date through the August 12, 2010 date of the ALJ's decision.  (Tr. 33-34).

### III.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"  Id.  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

# IV. Discussion

## A. Incomplete VE Hypothetical

Plaintiff argues that the ALJ failed to ask the VE a hypothetical question which included all of his impairments.  Specifically, Plaintiff argues that the ALJ did not properly consider or address his limitations in concentration, persistence, or pace; activities of daily living; and social functioning (with 1-2 episodes of decompensation).  (Doc. 13 at 14-16).

### 1.  Moderate Limitation in Concentration, Persistence, or Pace

The ALJ held that Plaintiff has moderate difficulties in this area.  (Tr. 22).  In the Plaintiff's RFC assessment and in the hypothetical she posed to the VE, the ALJ limited Plaintiff to the performance of "simple, routine, repetitive tasks."  (Tr. 32, 88). Plaintiff argues that these limitations do not adequately account for his deficits in maintaining concentration, persistence or pace, and consequently, the ALJ erred.  In response, the Commissioner argues that the Psychiatric Review Technique ("PRT") ratings are different from the RFC assessment and that "a 'moderate' limitation or 'moderate difficulties' in a broad area of functioning has little or no meaning in terms of a claimant's RFC."  (Doc. 15 at 5).

When the ALJ makes a finding that a claimant is limited in maintaining concentration, persistence or pace as part of the PRT, the ALJ must account for those limitations in the claimant's RFC assessment.  Winschel, 631 F.3d at 1180-81; Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005) (per curiam).  Limitations to simple routine tasks or unskilled work are typically not sufficient to account for a claimant's moderate limitations in concentration, persistence or pace.  See Winschel, 631 F.3d at 1180 (citing Stewart v. Astrue, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam)

(restricting hypothetical to simple, routine tasks that do not require constant interactions with coworkers or the general public insufficient to account for limitations of concentration, persistence and pace); Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004) (limiting hypothetical to simple, one or two-step tasks does not account for deficiencies in concentration, persistence or pace); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (limitation to simple jobs did not account for deficiencies in concentration, persistence, or pace)).

However, the Winschel court recognized that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Id.; see also Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011).  The issue before the Court is whether there is substantial medical evidence relied on by the ALJ that Plaintiff can do "simple repetitive" tasks despite his moderate limitations in concentration, persistence or pace.

At the hearing, the ALJ posed a series of hypothetical questions with additional debilitating limitations to the VE.  The ALJ asked, "[I]f I indicated that the individual could only perform simple, routine, repetitive tasks, based on Exhibit 6F, would that change your response?"  (Tr 88).   The VE replied in the affirmative and listed several jobs in the national economy Plaintiff could still perform.  (Id.). The ALJ then asked a slightly different hypothetical question to the VE, once again limiting Plaintiff to "simple, routine, repetitive tasks":

> Q. All right.  Same hypothetical individual, age, education, past relevant work.  The individual could perform sedentary work.  The individual could only occasionally climb, balance,

kneel, couch, and crawl.  Should avoid exposure to . . . hazards such as machinery and heights.  And could only perform simple, routine, repetitive tasks.  And uses a cane . . . would there be any jobs he could perform?

A. Well, yes.  Final assembler of optical goods.  DOT is 713.687-018.  This is sedentary, unskilled, SVP of 2.  National economy: 30,580; central Florida: 211. Another one would be an eye dropper assembler, DOT 739.687-086.  National economy: 239,550; I have a statewide figure of 4,700.

(Tr. 88-89).

Exhibit 6F is a residual functional capacity assessment completed by state agency

psychologist Dr. Green, who evaluated Plaintiff's record one time on March 26, 2008.  Dr.

Green noted that Plaintiff had moderate limitations in: the ability to maintain attention and

concentration for extended periods; the ability to work in coordination with or in proximity

to others without being distracted by them; the ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; and the

ability to respond appropriately to changes in the work setting.  (Tr. 387-88).  Dr. Green

opined that Plaintiff could understand simple routine data and that he had reduced

concentration, persistence and pace with somatic concerns.  (Tr. 388).

The ALJ found Dr. Green's assessment "persuasive" and afforded it "great weight."

(Tr. 30, 32).  The ALJ stated that, as a result of Dr. Green's assessment, Plaintiff could

perform simple, routine, and repetitive tasks.  (Tr. 32).  In fact, Dr. Green did not conclude

that Plaintiff could perform simple, routine, and repetitive tasks, or that Plaintiff could

perform such tasks despite reduced concentration, persistence and pace.

While other medical evidence documents Plaintiff's problems with concentration,

persistence and pace, I have not located, and the ALJ has not identified any medical

Case 6:12-cv-00147-GKS-TBS  Document 16   Filed 02/21/13   Page 19 of 21 PageID 1153

evidence that establishes that Plaintiff can "engage in simple, routine tasks or unskilled work *despite* limitations in concentration, persistence, and pace." <u>See</u> (Tr. 503-508, 862-86). Therefore, I respectfully recommend that the district court find that the ALJ's conclusion is not based on substantial medical evidence and remand on this ground.

### 2.  Moderate Limitation in Social Functioning

The ALJ found that Plaintiff has moderate limitations in social functioning.  (Tr. 22). In her RFC assessment, the ALJ limited Plaintiff to "brief interactions with others."  (Tr. 23).  The ALJ failed to expressly include this limitation, or Plaintiff's moderate limitation in social functioning, in the hypothetical posed to the VE.  Plaintiff argues that the "brief interactions with others" limitation does not adequately account for his deficits in social functioning.  (Doc. 13 at 16).  He relies on <u>Leighton v. Astrue</u>, No. 07-142-B-W, 2008 WL 2593789, at * 4 (D. Me. June 30, 2008), in which the court held that a limitation to brief interaction with others does not adequately account for moderate limitations in social functioning.  The Commissioner rejects <u>Leighton</u> as an "unpublished, ou[t]-of-circuit case" that is "not the law of the Eleventh Circuit."  (Doc. 15 at 9).  While it is true that <u>Leighton</u> is not the law of the Eleventh Circuit, I agree with other courts in this district that have found its rationale persuasive.  <u>See</u> <u>Wood v. Comm'r Soc. Sec.</u>, Case No. 6:09-cv-1090-Orl-GLK, 2010 U.S. Dist. LEXIS 32583, at *35-39 (M.D. Fla. April 2, 2010); <u>Clements v. Astrue</u>, Case No. 3:08-cv-65-J-HTS, 2009 U.S. Dist. LEXIS 8018, at *16-17 (M.D. Fla. Feb. 3, 2009).  Upon due consideration, I respectfully recommend that the district court reverse the ALJ's decision and remand the case on this ground.

### 3.  Moderate Limitations in Activities of Daily Living

The ALJ found that Plaintiff has moderate limitations in activities of daily living. (Tr. 21).  Plaintiff argues that the ALJ failed to make any "accommodation for his

- 19 -

moderate limitations in activities of daily living or his episodes of decompensation in the hypothetical to the VE, despite finding such limitations under the PRT." (Doc. 13 at 16). The Commissioner argues that the ALJ was not required to include these limitations in the hypothetical questioning of the VE because "nothing in the record translated this finding into a functional limitation." (Doc. 15 at 10).

I find that even before the issue became ripe for the VE's consideration, the ALJ erred by failing to adequately develop the record in regards to this medical issue. After the ALJ declared that Plaintiff had moderate limitations in activities of daily living, she abandoned the issue and offered no further analysis or explanation of how this limitation impacted Plaintiff's ability to perform substantial gainful activity, or how it related to Plaintiff's other impairments. The ALJ has a duty to develop the record. Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984). Because the ALJ's decision does not contain any discussion of the functional limitations caused by Plaintiff's moderate limitations in activities of daily living and because this limitation was not posed to the VE in a hypothetical, I respectfully recommend that the Commissioner's decision be reversed and remanded on this ground.

B.  Plaintiff's Credibility and Evaluation of Psychiatric Evidence

Plaintiff's remaining arguments focus on the ALJ's alleged error in failing to properly evaluate his credibility and the ALJ's failure to properly evaluate the psychiatric evidence. (Doc. 13 at 16-24). Because remand is required on the other issues raised by Plaintiff, it is unnecessary to review these additional objections to the ALJ's decision. Freese v. Astrue, No.8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. April 18, 2008) (citing Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)).

## V.  Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1.  The Commissioner's final decision in this case be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

2.  The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

3.  Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

4.  Plaintiff be directed that upon receipt of such notice, he shall promptly email Mr. Rudy and the OGC attorney who prepared the Government's brief to advise that the notice has been received.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on February 21, 2013.

THOMAS B. SMITH
United States Magistrate Judge


Copies furnished to:

    Presiding United States District Judge
    Counsel of Record